UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

LODI MEMORIAL HOSPITAL
ASSOCIATION, INC., a
California public benefit
corporation,

        Plaintiff,

    v.

BLUE CROSS OF CALIFORNIA,
doing business as ANTHEM BLUE
CROSS, a California
corporation; ANTHEM BLUE CROSS
LIFE AND HEALTH INSURANCE CO.,
a California corporation; THE
WELLPOINT COMPANIES, INC., an
Indiana corporation; WELLPOINT
INC., an Indiana corporation;
ANTHEM HEALTH PLANS OF
VIRGINIA, INC., a Virginia
corporation; BLUE CROSS BLUE
SHIELD OF TEXAS, a Texas
corporation; COMMUNITY
INSURANCE COMPANY, dba ANTHEM
BLUE CROSS AND BLUE SHIELD OF
OHIO, an Ohio corporation;
McLANE COMPANY, INC., a Texas
corporation; CARPENTERS HEALTH
AND WELFARE TRUST FUND FOR
CALIFORNIA; CEMENT MASONS
HEALTH AND WELFARE TRUST FUND
FOR NORTHERN CALIFORNIA;
CALIFORNIA'S VALUED TRUST,

NO. CIV. 12-1071 WBS GGH

MEMORANDUM AND ORDER RE:
MOTION TO REMAND

1

formerly known as CENTRAL
VALLEY TRUST; OPERATING
ENGINEERS HEALTH AND WELFARE
TRUST FUND; PIPE TRADES
DISTRICT COUNCIL NO. 36 HEALTH
AND WELFARE FUND; SMW LOCAL
104 HEALTH CARE PLAN; UFCW
NORTHERN CALIFORNIA HEALTH AND
WELFARE TRUST FUND; WESTERN
GROWERS ASSURANCE TRUST;
CALIFORNIA GROWER FOUNDATION
BENEFIT PLAN; DOES 1-200,

           Defendants.
_____/

----oo0oo----

         Plaintiff Lodi Memorial Hospital Association Inc.

initiated this action in state court against various trusts,

benefit plans, health plans, plan administrators, and insurers to

obtain reimbursement for healthcare services provided to their

members and insureds.  In 2009, defendants removed the case to

federal court, and this court granted plaintiff's motion to

remand the case pursuant to 28 U.S.C. § 1447(c) for lack of

subject matter jurisdiction in an Order dated June 25, 2009

("2009 Order").  After proceeding in state court for almost three

years, defendants[1] removed the case to federal court a second

time and plaintiff again moves to remand the case pursuant to §

1447(c).

I.  <u>Factual and Procedural Background</u>

         Plaintiff is a hospital and healthcare provider located

---

      [1]   Defendants Blue Cross of California, Anthem Blue Cross
Life and Health Insurance Co., Wellpoint Companies, Inc.,
Wellpoint Inc., Anthem Health Plans of Virginia, Inc., and
Community Insurance Company filed the notice of removal and have
taken the lead in opposing plaintiff's motion to remand.  Because
the remaining defendants joined in the notice of removal and
opposition to plaintiff's motion to remand, this Order refers to
all defendants collectively.

in Lodi, California. (Corrected First Am. Compl. ¶ 6.) Until March 31, 2007, plaintiff and defendant Blue Cross of California had a written contract under which plaintiff provided emergency medical services, post-stabilization inpatient medical services, and outpatient medical services to members and insureds of Blue Cross of California and its affiliates. (Id. ¶ 39.) After the written contract expired, plaintiff continued to provide medical services to these individuals and did not enter into a new contract with Blue Cross of California until January 1, 2009. (Id.)

In providing emergency services, plaintiff alleges that an implied-in-law agreement existed for defendants to reimburse plaintiff the reasonable and customary fair market value for the services provided based, in part, on plaintiff's statutory obligation to provide emergency services to all individuals without first confirming their ability to pay or insurance benefits. (Id. ¶¶ 48-51.) Before providing non-emergency and post-stabilization inpatient care to defendants' members and insureds, plaintiff allegedly contacted defendants to obtain authorization, and in turn, defendants either authorized the care, failed to arrange for a patient's transfer, or indicated that no authorization was necessary. (Id. ¶¶ 60-61.) With regard to outpatient services, plaintiff similarly informed defendants that patients claiming coverage with defendants sought outpatient services, verified that the individuals were eligible members or insureds of defendants, and verified that plaintiff was authorized to provide outpatient services and care. (Id. ¶ 70.) After providing the various services to defendants' members

1  and insureds, plaintiff submitted claims to defendants, but

2  defendants allegedly failed to sufficiently reimburse plaintiff

3  for the services rendered.  (Id. ¶¶ 53-56, 64-69, 72-90.)

4          Plaintiff subsequently filed a Complaint in San Joaquin

5  County Superior Court on April 1, 2009, alleging claims for

6  breach of implied-in-fact and implied-in-law contracts; services

7  rendered; account stated; intentional and negligent

8  misrepresentation; estoppel; intentional and negligent

9  interference with contract; intentional and negligent

10 interference with prospective economic advantage; and violations

11 of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§

12 17200-17210.  Defendants removed the action to federal court on

13 April 30, 2009, asserting that plaintiff's claims were completely

14 preempted by the Employee Retirement and Income Security Act of

15 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461.  This court granted

16 plaintiff's motion to remand, concluding that its claims were not

17 completely preempted by ERISA and thus the court lacked subject

18 matter jurisdiction over plaintiff's state law claims.

19         After the case was remanded, and the parties proceeded

20 with law and motion practice and discovery in state court.  The

21 state court granted defendants' demurrers based on plaintiff's

22 "having 'lumped' all the Defendants together in making its

23 allegations," (Docket No. 1 at Ex. I, ¶ 1), and plaintiff filed

24 its First Amended Complaint on February 11, 2010 and a Corrected

25 First Amended Complaint[2] ("FAC") shortly thereafter.  Defendants

26

27         [2]    The Corrected FAC remedied a clerical error in the
   First Amended Complaint, but did not make substantive changes.
28 All references to the FAC in this Order are to the Corrected FAC.

filed another round of demurrers to the FAC, arguing, <u>inter alia</u>, that ERISA preempted plaintiff's state law claims.  The state court overruled defendants' demurrers and rejected defendants' theory of ERISA preemption.  (<u>Id.</u> at Exs. O & S, ¶ 6.)

After necessitating a discovery referee to resolve disputes between the parties, defendants obtained the discovery it relies on in removing this case to federal court a second time.  Specifically, in plaintiff's Responses to Anthem Defendants' Requests for Admissions, Set Three, plaintiff admitted that a copy of a Conditions of Admission ("COA") that it had previously produced was a true and correct copy of its COA.  (Ridley Decl. Exs. O & P (Docket No. 43).)  Paragraph 8 of the COA is titled "Assignment of Insurance Benefits" and "authorizes . . . direct payment to the hospital of any insurance benefits otherwise payable to or on behalf of the undersigned."  (<u>Id.</u> at Ex. O.)  Paragraph 9 of the COA also states: "This hospital maintains a list of the health care service plans with which it currently contracts.  A list of such plans is available upon request from the finance office.  The hospital has no contract, express or implied, with any plan that does not appear on the list."  (<u>Id.</u> at Ex. S.)  Plaintiff also admitted that it was its regular business practice to have patients sign a copy of the COA upon registration and/or admission during the time period at issue in this lawsuit.[3]  (<u>Id.</u> at Ex. P at 3:4-7.)

---

[3]    The court does not rely on the statements in defense counsel's declaration about the completeness and quantity of the COAs plaintiff produced during discovery and thus overrules plaintiff's objections to those statements as moot. (<u>See</u> Docket No. 71-3.)

1    Relying on plaintiff's responses to the Third Set of

2 Requests for Admissions, defendants removed this action to

3 federal court a second time on April 24, 2012.  After plaintiff

4 filed a Notice of Related Cases, the court related the cases

5 pursuant to Eastern District Local Rule 123.  Presently before

6 the court are plaintiff's motion to remand, including its

7 requests for costs and fees associated with defendants' second

8 removal, and plaintiff's motion for sanctions pursuant to Federal

9 Rule of Civil Procedure 11.

10 II.  <u>Motion to Remand</u>

11    "Under 28 U.S.C. § 1441, a defendant may remove an

12 action filed in state court to federal court if the federal court

13 would have original subject matter jurisdiction over the action."

14 <u>Moore-Thomas v. Alaska Airlines, Inc.</u>, 553 F.3d 1241, 1243 (9th

15 Cir. 2009).  Federal courts have original subject matter

16 jurisdiction over "all civil actions arising under the

17 Constitution, laws, or treaties of the United States."  28 U.S.C.

18 § 1331.  To determine whether an action "arises" under federal

19 law, courts apply the "well-pleaded complaint rule," which

20 provides that "a claim arises under federal law 'only when a

21 federal question is presented on the face of the plaintiff's

22 properly pleaded complaint.'"  <u>Moore-Thomas</u>, 553 F.3d at 1243

23 (quoting <u>Valles v. Ivy Hill Corp.</u>, 410 F.3d 1071, 1075 (9th Cir.

24 2005)).

25    As a corollary to the well-pleaded complaint rule, the

26 "complete preemption doctrine" instructs that Congress "may so

27 completely preempt a particular area that any civil complaint

28 raising this select group of claims is necessarily federal in

6

character." Id. (quoting Toumajian v. Frailey, 135 F.3d 648, 653 (9th Cir. 1998)) (internal quotation marks omitted).  Under this doctrine, "if a federal cause of action completely preempts a state cause of action[,] any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law." Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 24 (1983).  Here, defendants contend that the federal court has subject matter jurisdiction over this action because ERISA completely preempts plaintiff's state law claims.

Pursuant to 28 U.S.C. § 1446(b)(3), "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  "Courts have found that a defendant may remove under the 'other paper' provision of section 1446(b) based on a plaintiff's discovery responses or deposition testimony." Steiner v. Horizon Moving Sys. Inc., 568 F. Supp. 2d 1084, 1087 (C.D. Cal. 2008).

When a case is remanded for lack of subject matter jurisdiction--as this court previously did in the 2009 Order--§ 1446(d) bars review of the remand order "on appeal or otherwise." 28 U.S.C. § 1146(d); Kircher v. Putnam Funds Trust, 547 U.S. 633, 640 (2006).  "This language has been universally construed to preclude not only appellate review but also reconsideration by the district court." Seedman v. U.S. Dist. Ct. for Cent. Dist. of Cal., 837 F.2d 413, 414 (9th Cir. 1988).

In light of the prohibition against review of a remand order in § 1146(d), once a district court has remanded a case, a defendant generally may not remove the case to federal court a second time.  See, e.g., In re La Providencia Dev. Corp., 406 F.2d 251, 252 (1st Cir. 1969) ("[T]he state court proceedings are to be interfered with once, at most.  This is not only in the interest of judicial economy, but out of respect for the state court and in recognition of principles of comity.  The action must not ricochet back and forth depending upon the most recent determination of a federal court."); Seedman, 837 F.2d at 141 ("[A] second removal petition based on the same grounds does not 'reinvest' the court's jurisdiction.  A remand order returns the case to the state courts and the federal court has no power to retrieve it.").

Nonetheless, "a defendant who fails in an attempt to remove on the initial pleadings can file a removal petition when subsequent pleadings or events reveal a new and different ground for removal."  Kirkbride v. Cont'l Cas. Co., 933 F.2d 729, 732 (9th Cir. 1991) (quoting FDIC v. Santiago Plaza, 598 F.2d 634, 636 (1st Cir. 1979); see also Sweet v. United Parcel Serv., Inc., Civ. No. 09-02653 DDP, 2009 WL 1664644, at *3 (C.D. Cal. June 15, 2009) ("[C]onsistent with a public policy that 'guards against premature and protective removals and minimizes the potential for a cottage industry of removal litigation,' successive removals must be based on new information." (quoting Harris v. Bankers Life & Cas. Co., 425 F.3d 689, 698 (9th Cir. 2005))); Barahona v. Orkin, Civ. No. 08-04634-RGK, 2008 WL 4724054, at *2 (C.D. Cal. Oct. 21, 2008) ("Successive removals are allowed only where the

second notice of removal is based on newly discovered facts not available at the time of the first removal.").

In their first notice of removal in this case, defendants represented that the court had jurisdiction under 28 U.S.C. § 1331 "based on the fact that the gravamen of the Complaint is to seek benefits from self-funded plans governed by [ERISA] that necessarily involve questions arising under ERISA, including pre-emption issues and defenses under ERISA." (Case No. 09-1178, Docket No. 1 at 3:23-26.)  The court disagreed with defendants and remanded the case to state court, where it proceeded for almost three years.  Defendants then filed a second notice of removal, again representing that the court has jurisdiction under § 1331 "based on the fact that the gravamen of the First Amended Complaint, as viewed in light of Plaintiff's Response to Defendants' Requests for Admission, is to seek benefits from self-funded plans governed by [ERISA] that necessarily involve questions arising under ERISA, including pre-emption issues and defenses under ERISA." (Docket No. 1 at 7:20-25.)  Defendants specifically contend that removal is proper based on the assignments in the COAs that plaintiff admits it regularly had patients sign and the language in the COAs indicating that plaintiff did not have a contractual relationship with defendants.

Defendants' argument that ERISA completely preempts plaintiff's state law claims because the patients assigned their rights to plaintiff is not a new ground for removal raised for the first time in defendants' second removal.  In opposing plaintiff's first motion to remand, defendants repeatedly argued

in their briefs and at oral argument "that plaintiff's claims are necessarily premised on an assignment of rights from beneficiaries."  (June 25, 2009 Order 7:13-16 (citing Defs.' Opp'n Mot. Remand at 7-13).)  At oral argument, defendants insisted that it "is very clear from the allegations in the complaint [] that the plaintiff is in fact an assignee . . . while they don't say, hey, I'm an assignee, that is the only way those claims make sense."  (June 22, 2009 Tr. 6:2-4, 7:10-11; see also id. at 6:23-25, 8:9-13 ("But what the reality is, for them to assert the claims they have in the complaint, they have to do so based on a position of being an assignee. . . . In order to make statements with regard to confirming coverage and determining representation, it again goes back to the plans.  And the only way that they can come back to the plans and make allegations regarding payments are that they have a position as assignee.").)

        Similarly, defendants' argument that plaintiff lacks a contractual relationship with them is not a new ground for removal because defendants advanced the same theory in opposition to plaintiff's first motion to remand.  For example, in their opposition to plaintiff's first motion to remand, defendants argued that "Plaintiff admits that there are no written agreements between it and Defendants and does not allege that Defendants, through the purported misrepresentations, assumed an obligation to pay Plaintiff independent of the benefits due to members of the Defendant ERISA plans."  (Case No. 09-1178, Docket No. 38 at 1:18-22.)  At oral argument on the first motion to remand, defense counsel argued that "the claims brought by

plaintiff[] do not bring an independent claim and is counter to and distinguishable from the cases they cite in particular because there is no contractual relationship between the defendants and the plaintiff[].  In fact, the complaint itself acknowledges this fact."  (June 22, 2009 Tr. 3:22-4:2.)

Defendants thus advance the same theories of complete preemption giving rise to federal question jurisdiction in their second notice of removal and raise the same arguments in opposition to plaintiff's second motion to remand as they did in 2009.  The only difference--or "new information"--is that defendants now have the evidence to prove[4] the assertions they made in support of their first notice of removal and in

_____

[4]   After protracted discovery disputes, it is undisputed that plaintiff obtained assignments from at least most of its inpatients in the COAs.  However, defendants have not cited, nor is the court aware of, authority establishing that paragraph 9 of the COA precludes plaintiff from bringing its state law claims.  The cases defendants cite regarding disclaimer and waiver address a disclaimer or waiver of rights contained in a contract between contracting parties.  (See Docket No. 42 at 28:5-11.)  Further, while plaintiff admitted that a COA it had produced was a true and correct copy of its COA, plaintiff did not admit to the truth of any statements in the COA.  (See Ridley Decl. Ex. P at 2:3-20 (Docket No. 43).)  The trier of fact will ultimately have to determine, based on the COA and all other relevant evidence, whether an implied contract existed between plaintiff and defendants.
Moreover, plaintiff produced copies of COAs for patients at issue in this litigation on April 18, 2011, May 2, 2011, and July 12, 2011.  (Miller Decl. ¶ 5 (Docket No. 31); Ridley Decl. ¶¶ 12, 22 (indicating that the copy of a COA defendants provided to the court in opposing the motion to remand was identified as previously produced in plaintiff's Supplemental Response to Anthem Defendant's Special Interrogatory No. 85 and indicating that such response was dated July 29, 2011).)  While defendants contend that the copies of the COAs plaintiff produced were incomplete, they do not dispute that they received a copy of a COA containing paragraph 9 almost a year before filing the instant notice of removal.  The court thus doubts that defendants' reliance on paragraph 9 from the COAs to support their notice of removal on April 24, 2012 is timely under § 1446(b)(3).

11

opposition to plaintiff's first motion to remand.  It is not enough, however, that defendants may have discovered new evidence if the new evidence does not advance a new factual basis for removal.  Cf. Sweet, 2009 WL 1664644, at *4.

Defendants erroneously interpret the court's 2009 Order as dependent on the absence of evidence establishing an assignment or the lack of a contractual relationship between the parties.  In previously remanding this case, the court's analysis focused on the allegations and claims in plaintiff's Complaint, not defendants' ability or inability to prove whether plaintiff had obtained assignments from the patients or had a contractual relationship with defendants.  Simply because it may  now be undisputed that the patients assigned their rights to plaintiff does not alter the court's prior conclusion that plaintiff can chose--and indeed did choose--to pursue independent state law claims.

In Seafarers, which this court relied on heavily in the 2009 Order, the Ninth Circuit recognized that the ability to bring an ERISA claim does not require a plaintiff to pursue the ERISA claim in lieu of independent state law claims:

> Although [plaintiff] could have brought an ERISA claim derivatively as an assignee, the Complaint does not assert a derivative claim.  The Complaint does not mention an assignment and does not predicate its alleged right to recovery on any assignment. Rather, the Complaint asserts claims based on a direct contractual relationship that arose between [plaintiff] and [defendant] and misrepresentations made to [plaintiff] by [defendant]. None of these claims rest on the assignment of benefits under an ERISA plan, the claims are based on independent state law, and the dispute involves a contract and representations made between a third party provider and a plan-a relationship that is not governed by ERISA.

Catholic Healthcare W.-Bay Area v. Seafarers, 321 Fed. App'x 563, 564 (9th Cir. 2008).

During oral argument on the first motion to remand, the court had an extended dialogue with defense counsel about the difference between plaintiff having an assignment of benefits and electing whether or not to pursue a claim based on the assignment:

> MS. RIDLEY: To make the claims that are being asserted in the complaint, while they don't say, hey, I'm an assignee, that is the only way those claims make sense.
>
> THE COURT: But it's not the only way that makes sense to the plaintiff is my point.  The plaintiff has a little different theory.  They're claiming that they have some sort of a contractual or promissory relationship to your clients, that your clients assured them that they would be paid if they took care of these patients, that type of thing.  Now, you may make a good point, that they can't recover under ERISA if that's all they're talking about. But that's why they said it's not brought under ERISA, it's brought under this other theory that they have elected to proceed.  Now, isn't the plaintiff the master of his own suit, and if he wants to proceed on a claim that you don't think is meritorious, isn't he entitled to do that?

(June 22, 2009 Tr. 7:9-25.)

Moreover, under the current complete preemption test, a plaintiff's ability to bring an ERISA claim does not result in complete preemption unless "no other independent legal duty [] is implicated by a defendant's actions." Aetna Health Inc. v. Davila, 542 U.S. 200, 210 (2004).  Specifically, "a state-law cause of action is completely preempted if (1) 'an individual, at some point in time, could have brought [the] claim under ERISA § 502(a)(1)(B),' and (2) 'where there is no other independent legal duty that is implicated by a defendant's actions.'" Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941, 946 (9th

13

Cir. 2009) (quoting <u>Davila</u>, 542 U.S. at 210); <u>accord</u> <u>Fossen v.</u>
<u>Blue Cross & Blue Shield of Mont., Inc.</u>, 660 F.3d 1102, 1107-08
(9th Cir. 2011).

Here, the first prong of the ERISA complete preemption
test is satisfied because plaintiff obtained assignments from the
patients it treated.[5]  <u>See</u> <u>Blue Cross of Cal. v. Anesthesia Care</u>
<u>Assocs. Med. Grp., Inc.</u>, 187 F.3d 1045, 1051 (9th Cir. 1999)
("[B]ecause a health care provider-assignee stands in the shoes
of the beneficiary, such a provider has standing to sue under §
502(a)(1)(B) to recover benefits due under the plan.").

"To apply the second part of <u>Davila</u>'s § 502(a) conflict
preemption test, [the court] must determine whether the state-law
claims 'arise independently of ERISA or the plan terms.'"
<u>Fossen</u>, 660 F.3d at 1110 (quoting <u>Davila</u>, 542 U.S. at 212).  "If
there is some other independent legal duty beyond that imposed by
an ERISA plan, a claim based on that duty is not completely
preempted under § 502(a)(1)(B)."  <u>Marin Gen. Hosp.</u>, 581 F.3d at
949.  In <u>Marin</u>, a hospital had contacted an ERISA plan
administrator to confirm a prospective patient's insurance
coverage and the plan administrator orally verified the patient's
coverage, authorized treatment, and agreed to cover 90% of the
patient's medical expenses.  <u>Id.</u> at 943.  Because the patient's

---

[5]      Plaintiff admitted it was its regular business practice
to have inpatients sign COAs, which contained assignments.  It
points out, however, that not every inpatient who received
services giving rise to the claims at issue in this lawsuit would
have signed a COA and that outpatients did not sign a COA.
(Pl.'s Reply at 3:3-6 (Docket No. 71).)  Defendants have not
addressed how the first prong would be satisfied for claims based
on services provided to patients who did not assign their rights
in a COA.

ERISA plan provided for coverage at less than 90% of the medical costs, the plan reimbursed the hospital at the lower rate provided for in the plan. Id. The hospital brought state law claims based on the oral contract it allegedly entered into with the plan administrator for reimbursement of 90% of the patient's medical expenses. Id.

In applying the second prong from Davila, the Ninth Circuit held that the hospital's state law claims "do not rely on, and are independent of, any duty under an ERISA plan." Id. at 949. The court explained:

> Defendants contend that since the remedy the Hospital seeks--the payment of money--is the same as a possible remedy under § 502(a)(1)(B), the Hospital's suit amounts to a claim under § 502(a)(1)(B). This misunderstands the nature of the second prong of the Davila test. Under this prong, we ask only whether "there is no other independent legal duty that is implicated" by a defendant's actions. We do not ask whether that legal duty provides for a similar remedy, such as the payment of money. . . . Since the state-law claims asserted in this case are in no way based on an obligation under an ERISA plan, and since they would exist whether or not an ERISA plan existed, they are based on "other independent legal dut[ies]" within the meaning of Davila.

Id. at 950 (alteration in original). Similar to the hospital in Marin, plaintiff is seeking recovery under state law claims based on representations and promises defendants allegedly made to plaintiff that were independent of the benefits promised to the patients in the underlying ERISA plans.

While this court did not expressly address the second prong from Davila in the 2009 Order,[6] it found that plaintiff

---

[6]   Both parties framed their arguments in light of the ERISA complete preemption test articulated in Toumajian, 135 F.3d 648, which this court applied in its 2009 Order. Under that standard, ERISA completely preempted a state law claim only if

"seeks to enforce its own independent, non-derivative rights" and rejected defendants' argument that plaintiff could seek recovery only under ERISA as an assignee.  The 2009 Order explained that plaintiff is suing based on the representations defendants allegedly made to plaintiff that defendants would reimburse plaintiff for services rendered to the patients and the implied contracts between plaintiff and defendants.

This court's previous finding in the 2009 Order that plaintiff was proceeding on independent, non-derivative state law claims is not subject to review.  Although plaintiff filed the FAC after the 2009 Order, defendants do not argue that the FAC is materially different from the Complaint and, with the exception of dropping its claims for negligent interference with contract in the FAC, plaintiff's claims in the FAC and Complaint remain the same.  More importantly, removal based on any new or

---

"the state law claim 'relates to' an ERISA plan within the meaning of § 1144(a) and falls within the scope of ERISA's civil enforcement found in § 1132(a)."  Toumajian, 135 F.3d at 654.
The Ninth Circuit, however, developed a new two-prong test in light of the Supreme Court's decision in Davila: "Under Davila, a state-law cause of action is completely preempted if (1) 'an individual, at some point in time, could have brought [the] claim under ERISA § 502(a)(1)(B),' and (2) 'where there is no other independent legal duty that is implicated by a defendants actions.'"  Marin Gen. Hosp., 581 F.3d at 946 (quoting Davila, 542 U.S. at 210).
Even assuming the court applied an out-dated complete preemption test in the 2009 Order and that such error was not harmless, defendants are not entitled to a successive removal based on that error.  See Briscoe v. Bell, 432 U.S. 404, 414 n.13 (1977) ("Where the order [of remand] is based on one of the enumerated grounds, review is unavailable no matter how plain the legal error in ordering the remand."); Atl. Nat'l Trust LLC v. Mt. Hawley Ins. Co., 621 F.3d 931, 940 (9th Cir. 2010) ("Where a remand order 'is based on one of the grounds enumerated in 28 U.S.C. § 1447(c),' and that ground is colorable, then 'review is unavailable no matter how plain the legal error in ordering the remand.'" (quoting Kircher, 547 U.S. at 642)).

different allegations in the FAC would be untimely because §
1446(b)(3) required defendants to file a notice of removal within
thirty days of receiving a copy of the FAC.  Here, defendants
filed the second notice of removal almost two years after
plaintiff filed the FAC.[7]

As the court recognized in the 2009 Order, it is left
to be determined whether plaintiff can prevail on its state law
claims.  To avoid complete preemption, however, an independent
legal duty need only be "implicated" by defendants' actions and
it would be premature and outside of this court's jurisdiction to
determine the ultimate question of liability in this case.

Because plaintiff's allegations and claims remain the
same as they were at the time of the first removal and
defendants' theory of federal question jurisdiction is the same
now as it was at the time of the first removal, defendants'
successive notice of removal is an improper attempt to seek
review of the 2009 Order remanding this case.  Cf. Jones v. J.C.
Penney Corp., Inc., Civ. No. 11-5631 PSG, 2011 WL 4529406, at *3
(C.D. Cal. Sept. 29, 2011) (holding that "an order resolving a
contested remand motion in which no new facts or pleadings are
implicated" does not justify a successive removal because it did
not "effect[] a substantial change in the case").  Even assuming
the "new evidence" justifies defendants' successive removal,
ERISA does not completely preempt plaintiff's state law claims

---

[7]   Although defendants repeatedly suggest that the FAC
should be read in light of the discovery on which defendants base
their second notice of removal, they do not explain how any
allegations in the FAC justify removal now but could not have
supported removal before defendants obtained the discovery they
relied on in removing this case a second time.

17

because independent legal duties are implicated by defendants'
actions.  Accordingly, the court will grant plaintiff's motion to
remand this case to state court.

III.  Attorneys' Fees and Costs

Pursuant to § 1447(c), "[a]n order remanding the case
may require payment of just costs and any actual expenses,
including attorney fees, incurred as a result of the removal."
"The decision to award such fees is within the district court's
discretion and does not require a finding of bad faith removal
because the purpose of such an award is not punitive, but rather
to reimburse a plaintiff for wholly unnecessary litigation costs
caused by defendant."  Moreno v. Select Portfolio Servicing,
Inc., Civ. No. 1:10-503 OWW, 2010 WL 2525980, at *12 (E.D. Cal.
June 23, 2010) (citing Moore v. Permanente Med. Grp., Inc., 981
F.2d 443, 446-47 (9th Cir. 1992)).  "Absent unusual
circumstances, courts may award attorney's fees under § 1447(c)
only where the removing party lacked an objectively reasonable
basis for seeking removal."  Martin v. Franklin Capital Corp.,
546 U.S. 132, 141 (2005); see also id. at 140 ("The [] test for
awarding fees under § 1447(c) [] recognize[s] the desire to deter
removals sought for the purpose of prolonging litigation and
imposing costs on the opposing party, while not undermining
Congress' basic decision to afford defendants a right to remove
as a general matter, when the statutory criteria are
satisfied.").

In the 2009 Order, the court declined to award
plaintiff its attorneys' fees and costs under § 1447(c) primarily
because Fresno Community Hospital and Medical Center v. Souza,

18

1  Civ. No. 1:07-0325 LJO, 2007 WL 1994056 (E.D. Cal. July 5, 2007),

2  supported defendants' argument.  (See 2009 Order at 11:18-12:19.)

3  In opposing plaintiff's second motion to remand, defendants again

4  rely heavily on Souza and another recent district court

5  decision.[8]  Although it was objectively reasonable for defendants

6  to rely on this line of cases in their first notice of removal,

7  it was not reasonable to rely on the same line of authority in a

8  successive notice of removal after this court found that the

9  Ninth Circuit's decision in Seafarers foreclosed defendants'

10  argument under that line of cases.  (See 2009 Order at 11:15-17.)

11  Subsection 1447(d) unequivocally bars review of the 2009 Order

12  and defendants were unreasonable in viewing their second notice

13  of removal as anything but an attempt to seek a second opinion on

14  arguments this court rejected in the 2009 Order.

15       "The process of removing a case to federal court and

16  then having it remanded back to state court delays resolution of

17  the case, imposes additional costs on both parties, and wastes

18  judicial resources."  Martin, 546 U.S. at 140.  Here, defendants

19  thoroughly raised their ERISA complete preemption argument in

20  2009, and this court found that plaintiff's claims were not

21

22       [8]   Defendants rely heavily on Melamed v. Blue Cross of
    California, Civ. No. 11-4540 PSG, 2011 WL 3585980 (C.D. Cal. Aug.
23  16, 2011), which found complete ERISA preemption of a state law
    claim by a hospital seeking reimbursement from the insurer.  In
24  that case, however, the plaintiff's Complaint alleged "that money
    is owed to Plaintiff as third-party beneficiaries of the ERISA-
25  governed healthcare agreements entered into between Defendants
    and at least four of Defendants' members," and thus the
26  "Complaint [made] it undeniably clear that, in some cases, it is
    the ERISA-governed 'contracts' themselves that warrant payment."
27  Melamed, 2011 WL 3585980, at *5.  As the court emphasized in the
    2009 Order, plaintiff's FAC does not allege that plaintiff is
28  suing to recover the benefits promised to the patients under the
    ERISA plans.

completely preempted and remanded the case to state court.  The

state court also rejected defendants' ERISA complete preemption

argument.  Defendants' successive notice of removal--advocating

the same theories and based on "new evidence" that defendants

arguably had in their possession well outside the thirty days

preceding their notice of removal[9]--has unreasonably delayed

resolution of this protracted case and necessitated plaintiff

incurring unnecessary fees and costs in seeking to remand this

action.

        Accordingly, because defendants were unreasonable in

believing that the "new evidence" supporting their second notice

---

        [9]    As the court previously mentioned, <u>supra</u> note 4, it
appears that defendants had a copy of a COA well outside the
thirty-day window § 1446(b)(3) provides for removal.  Plaintiff
has identified several occasions prior to the Third Set of
Requests for Admission when it appears defendants received a copy
of a COA containing an assignment or were told about plaintiff's
practice of obtaining assignments.  For example, in plaintiff's
supplemental response to defendants' special interrogatory number
85, dated July 29, 2011, plaintiff stated that it is its "regular
practice to have patients sign a Condition of Registration and/or
Conditions of Admission form, which contain an assignment of
benefits provision" and indicated that it had "already produced
the Conditions of Admission and Conditions of Registration forms
for the claims at issue in this action (<u>see, e.g.</u>, LODI-018425,
LODI-018405) after a reasonable and diligent search."  (Ridley
Decl. Ex. I at 54:28-55:4 (Docket No. 43).)
        On the other hand, the discovery referee was not
satisfied with plaintiff's responses and production regarding
assignments.  In the referee's August 5, 2011 Order, she
specifically required plaintiff to "confirm whether its practice
is to obtain an executed assignment in every case and claim file
in the matter and identify what document constitutes the
assignment."  (<u>Id.</u> at Ex. J at 2:23-27.)  Again, in her February
15, 2012 Order, the discovery referee ordered plaintiff to
"produce the complete assignments of benefits to the extent such
documents exist."  (<u>Id.</u> at Ex. N at 5:17-18.)
        Because the court finds that defendants' successive
notice of removal is not supported by new grounds, the court need
not entangle itself in the parties' discovery disputes to
determine whether defendants' notice of removal was timely under
§ 1446(b)(3).

20

of removal gave rise to a new ground in support of federal question jurisdiction, the court will award plaintiff its attorneys' fees and costs in seeking to remand this action a second time.  See Peabody v. Maud Van Cortland Hill Schroll Trust, 892 F.2d 772, 777 (9th Cir. 1989) ("Only if a change occurred in [plaintiff's] case that would make these arguments relevant could [defendant] in good faith petition for removal. . . . We conclude that the second Petition for Removal was frivolous because its basis had previously been rejected by the district court.").

To determine the amount of an award of attorneys' fees, the court must first calculate the lodestar by taking the number of hours reasonably expended in the litigation and multiplying it by a reasonable hourly rate.  Fisher v. SJB-P.D. Inc., 214 F.3d 1115, 1119 (9th Cir. 2000) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)).  "Though the lodestar figure is presumptively reasonable, the court may adjust it upward or downward by an appropriate positive or negative multiplier reflecting a host of 'reasonableness' factors, including the quality of representation, the benefit obtained for the [plaintiff], the complexity and novelty of the issues presented, and the risk of nonpayment."  In re Bluetooth Headset Prods. Liab. Litig., --- F.3d ----, ----, 2011 WL 3632604, at *4 (9th Cir. 2011) (internal quotations and citations omitted).[10]

_____

[10]     Eastern District Local Rule 293(c) provides the following list of non-exhaustive factors that guide a court's award of attorneys' fees:

(1)  the time and labor required of the attorney(s);
(2)  the  novelty  and  difficulty  of  the  questions

Plaintiff proposes a lodestar figure of $40,256.00 for the attorneys' fees incurred as a result of defendants' successive removal of this action.  This amount accounts for the hours expended by two partners out of the Los Angeles office of the law firm of Hooper, Lundy, & Bookman, P.C., ("HLB"), Glenn Solomon and Daron Tooch, and two associates out of the San Francisco office of the same firm, Katherine Miller and Kaitlyn Halesworth.

A.    <u>Reasonable Hourly Rate</u>

A reasonable rate is typically based upon the prevailing market rate in the community for "similar work performed by attorneys of comparable skill, experience, and reputation."  <u>Chalmers v. City of Los Angeles</u>, 796 F.2d 1205,

---

presented;
(3)  the skill required to perform the legal service properly;
(4)  the preclusion of other employment by the attorney(s) because of the acceptance of the action;
(5)  the customary fee charged in matters of the type involved;
(6)  whether the fee contracted between the attorney and the client is fixed or contingent;
(7)  any time limitations imposed by the client or the circumstances;
(8)  the amount of money, or the value of the rights involved, and the results obtained;
(9)  the experience, reputation, and ability of the attorney(s);
(10) the "undesirability" of the action;
(11) the nature and length of the professional relationship between the attorney and the client;
(12) awards in similar actions; and
(13) such other matters as the Court may deem appropriate under the circumstances.

E.D. Local R. 293(c); <u>see also</u> <u>Kerr v. Screen Extras Guild, Inc.</u>, 526 F.2d 67, 70 (9th Cir. 1975) (identifying the same factors as relevant).

22

1210 (9th Cir. 1986).  "[T]he burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community."  <u>Blum v. Stenson</u>, 465 U.S. 886, 896 n.11 (1984).  Plaintiff and defendants agree that the relevant communities for determining the market rates in this case are Los Angeles and San Francisco, not Sacramento.

HLB "is a law firm that practices exclusively in the healthcare area" and Solomon, who has almost twenty-one years of experience, and Tooch, who has almost twenty-four years of experience, have expertise and significant experience in the healthcare field.  (Solomon Decl. (Docket No. 77.5) ¶¶ 6-21.) Miller is a sixth-year associate at HLB, has represented numerous hospitals, and worked for a hospital collection company before law school.  (<u>Id.</u> ¶ 12.)  Halesworth is a second-year associate at HLB.  Plaintiff requests rates of $670 per hour for work Solomon and Tooch performed, $490 per hour for work Miller performed, and $370 per hour for work Halesworth performed.  The court must therefore determine whether $670 per hour is a reasonable rate in Los Angeles for partners with approximately twenty years of experience, $490 per hour is a reasonable rate in San Francisco for a sixth-year associate, and $370 per hour is a reasonable rate in San Francisco for a second-year associate.

The only evidence before the court on this issue came from a declaration filed in support of plaintiff's reply, in which Solomon explains that HLB regularly evaluates its rates to ensure that they are reasonable and competitive and that, in his opinion, the requested rates are consistent with the rates

23

charged by comparable attorneys in Los Angeles and San Francisco. (<u>Id.</u> ¶¶ 2-4.)  Solomon also indicates that plaintiff and other HLB clients pay the same rates for legal services from HLB.  (<u>Id.</u> ¶ 5.)

Not only does this evidence appear for the first time in plaintiff's reply, thus denying defendants the opportunity to respond to it, the court is not satisfied that a declaration from one of the attorneys whose fees are sought is sufficient to establish that the rates are reasonable.  <u>Accord</u> <u>Campbell v. Nat'l Passenger R.R. Corp.</u>, 718 F. Supp. 2d 1093, 1098 (N.D. Cal. 2010) ("The fee applicant has the burden to produce evidence, other than the declarations of interested counsel, that the requested rates are in accordance with those prevailing in the community for attorneys of comparable skill and reputation.").  In previous fee requests, the court has seen more adequate evidence addressing the reasonableness of rates, such as declarations from counsel unaffiliated with the case, results of empirical studies of fee rates in a particular community, and citation to other court decisions determining reasonable rates.

Without the benefit of assistance from the parties, the court found two relatively recent cases awarding fees for partners in Los Angeles at hourly rates ranging between $562.50 and $594.  <u>See</u> <u>Camarillo v. City of Maywood</u>, Civ. No. 07-03469, 2011 WL 3665028, at *9-10 (C.D. Cal. Aug. 22, 2011) (finding that $562.50 is a reasonable hourly rate for work performed by Los Angeles partners); <u>ConsumerInfo.com, Inc. v. Money Mgmt. Int'l., Inc.</u>, Civ. No. 07-04275, 2009 WL 52163, at *7 (C.D. Cal. Jan. 8, 2009), <u>vacated on other grounds in</u> 374 Fed. App'x 696 (9th Cir.

2010) (awarding, based in part on "its own knowledge of hourly rates in the Los Angeles legal community," hourly rates of $576 and $594 per hour for partners in a trademark infringement and breach of contract case); cf. Langston v. N. Am. Asset Dev. Corp. Grp. Disability Plan, Civ. No. 08-02560, 2010 WL 1460201, at *1 (N.D. Cal. Apr. 12, 2010) (awarding rate of $550 per hour for a partner located in Alameda, California, in an ERISA case).

Although the court was able to find cases in which courts found fees exceeding the requested rate of $670 per hour in San Francisco were reasonable, plaintiff has not persuaded the court that $670 is a reasonable rate for the services Solomon and Tooch performed.  Given the absence of evidence from plaintiff and in light of the fees awarded to partners in the Los Angeles community in 2011 and 2010, the court finds that a reasonable fee for the work Solomon and Tooch performed is $580 per hour.

Plaintiff seeks fees for Miller, a sixth-year associate, at the rate of $490 per hour.  Although plaintiff submitted only minimal evidence illuminating Miller's experience and expertise, the court had the opportunity to observe Miller at oral argument and found that she was prepared and effectively argued plaintiff's motion to remand against her eight counterparts at the hearing.  Nonetheless, plaintiff's requested fee of $490 for Miller's work generally exceeds recent rates awarded for San Francisco associates with comparable experience. See, e.g., Oster v. Standard Ins. Co., 768 F. Supp. 2d 1026, 1035 (N.D. Cal. 2011) (awarding rate of $400 per hour for a San Francisco associate with "substantial ERISA litigation experience"); Caplan v. CNA Fin. Corp., 573 F. Supp. 2d 1244,

25

1249 (N.D. Cal. 2008) (awarding $350 per hour for a sixth-year
Oakland associate in an ERISA case); cf. Autodesk, Inc. v.
Flores, Civ. No. 10-01917, 2011 WL 1884694, at *2 (N.D. Cal. May
18, 2011) (awarding rate of $350 per hour for a San Francisco
associate with nine years of experience in a trademark
infringement case).  But see Armstrong v. Brown, 805 F. Supp. 2d
918, 921 (N.D. Cal. 2011) (awarding rate of $480 per hour for a
San Francisco associate with four years of experience and $400
per hour for a San Francisco associate with two years of
experience in a complicated ADA case); Cals. for Disability
Rights v. Cal. Dep't of Transp., Civ. No. 06-05125, 2010 WL
8746910, at *10, *13 (N.D. Cal. Dec. 13, 2010) (awarding rate of
$530 per hour for San Francisco associate with four years of
experience and rates ranging from $395 to $440 for San Francisco
associates with one year of experience in a class action
disability case).  In light of fees awarded in comparable cases
and the lack of evidence from plaintiff establishing the
reasonableness of the requested fee for Miller, the court finds
that a reasonable hourly rate for the work Miller performed is
$400 per hour.

          Lastly, plaintiff requests an hourly rate of $370 for
work Halesworth, a second-year associate, performed.  In light of
the lack of evidence from plaintiff, the rates discussed above
for associates with greater experience, and the $400 rate the
court found reasonable for Miller, the court finds that $370 per
hour is not a reasonable rate for Halesworth's services.
Balanced against rates in the $370 range for associates with
greater experience, however, are cases awarding $200 to $225 per

26

hour for work performed by non-attorney paralegals and law

student clerks at San Francisco firms.  E.g., Loretz v. Regal

Stone, Ltd., 756 F. Supp. 2d 1203, 1211 (N.D. Cal. 2010) (finding

hourly rate of $225 per hour for paralegal was reasonable);

Caplan, 573 F. Supp. 2d at 1249 (finding that rate of $200 per

hour was reasonable for law student clerk in San Francisco).

With these considerations in mind, the court finds that a

reasonable hourly rate for the work Halesworth performed is $300

per hour.[11]

   b.   Reasonable Number of Hours

        "In determining reasonable hours, counsel bears the

burden of submitting detailed time records justifying the hours

claimed to have been expended."  Chalmers, 796 F.2d at 1210.

"Those hours may be reduced by the court where documentation of

the hours is inadequate; if the case was overstaffed and hours

are duplicated; if the hours expended are deemed excessive or

otherwise unnecessary."  Id.  The Supreme Court has recently

explained that "trial courts need not, and indeed should not,

become green-eyeshade accountants" and the "essential goal in

shifting fees (to either party) is to do rough justice, not to

achieve auditing perfection."  Fox v. Vice, --- U.S. ----, ----,

---

[11]    In its reply, plaintiff submitted a 2010 declaration
filed in state court by one of the defendant's counsel indicating
that her firm charged hourly rates of $550 for an eighth-year
associate and $310 for a second-year associate.  Plaintiff
contends that, because these rates were billed in 2010, they
illustrate that the rates plaintiff requests for HLB's associates
in 2012 are reasonable.  The court will not rely on this evidence
because it shows only the rate defense counsel charged, not the
rate the client actually paid, and, because plaintiff first
submitted this evidence in its reply, defendants did not have an
opportunity to dispute the evidence or indicate its 2012 rates.

131 S. Ct. 2205, 2216 (2011).

Plaintiff has represented that Solomon spent 11.8 hours, Tooch spent 3.4 hours, Miller spent 58.2 hours, and Halesworth spent 4.2 hours in seeking to remand this action.  In light of the voluminous filings and lengthy briefing by both parties, the court's initial reaction is that the collective 77.6 hours plaintiff's counsel expended is reasonable.  See id. ("[T]rial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.").  Plaintiff has also submitted detailed invoices accounting for the hours expended and defendants have not suggested that they spent less time in removing this action and opposing plaintiff's motion to remand.

Defendants argue, however, that plaintiff's fees should be reduced because plaintiff utilized block billing, which is "the time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." Welch v. Metropolitan Life Ins. Co., 480 F.3d 942, 945 n.2 (9th Cir. 2007) (internal quotation marks omitted).  In reviewing counsel's invoices, however, the vast majority of counsel's entries are limited durations of time for specific tasks.  See Fox, 131 S. Ct. at 2216 ("[T]rial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.").  Of the entries that exceed four hours, the majority of the work performed involved researching and drafting the memorandum and reply in support of the motion to remand, which can reasonably continue for lengthy

durations.  The court also notes that plaintiff did not seek fees for the time expended to prepare its supplemental briefs addressing its fee award.  The court therefore does not find it necessary to reduce the number of hours reasonably expended or fees awarded based on any block billing.

In light of all of the considerations discussed, the court finds that the fees calculated at the aforementioned rates and hours constitute a reasonable fee award and a further reduction or increase is unwarranted.  Plaintiff also seeks costs in the amount of $83.72 incurred to serve courtesy copies for its motion to remand, and defendants do not contest this amount. Accordingly, the court will award the following fees and costs to plaintiff pursuant to § 1447(c):

| Attorney | Rate | Hours | Total |
|----------|------|-------|-------|
| Glenn Solomon | $580 | 11.8 | $6,844.00 |
| Daron Tooch | $580 | 3.4 | $1,972.00 |
| Katherine Miller | $400 | 58.2 | $23,280.00 |
| Kaitlyn Halesworth | $300 | 4.2 | $1,260.00 |
| Costs | | | $83.72 |
| **TOTAL AWARD:** | | | **$33,439.72** |

IV.  Rule 11 Sanctions

In relevant part, Federal Rule of Civil Procedure 11(b) provides:

> By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are

1    warranted by existing law or by a nonfrivolous argument
2    for extending, modifying, or reversing existing law or
     for establishing new law . . . .

3    Rule 11(c) provides for the imposition of sanctions if Rule 11(b)

4    is violated, and thus sanctions are appropriate "when a filing is

5    frivolous, legally unreasonable, or without factual foundation,

6    or is brought for an improper purpose." Simpson v. Lear

7    Astronics Corp., 77 F.3d 1170, 1177 (9th Cir. 1996).  While

8    imposing sanctions under the court's inherent power requires a

9    finding of bad faith, the imposition of Rule 11 sanctions

10   requires only a showing of objectively unreasonable conduct.  In

11   re DeVille, 361 F.3d 539, 548 (9th Cir. 2004).

12       Rule 11(c)(4) provides that "[a] sanction imposed under

13   this rule must be limited to what suffices to deter repetition of

14   the conduct or comparable conduct by others similarly situated."

15   A Rule 11 sanction may include "nonmonetary directives; an order

16   to pay a penalty into court; or, if imposed on motion and

17   warranted for effective deterrence, an order directing payment to

18   the movant of part or all of the reasonable attorney's fees and

19   other expenses directly resulting from the violation."  Rule

20   11(c)(4).

21       Plaintiff requests that the court impose the following

22   Rule 11 sanctions against defendants' counsel:[12] 1) requiring

23   defense counsel to pay plaintiff's attorneys' fees and costs

24   incurred in connection with its second motion to remand and the

25   instant motion for sanctions; 2) enjoining defendants from filing

26   _____

27       [12]  Although plaintiff requests that sanctions be imposed
     against defendants, Rule 11(c)(5)(A) prohibits the imposition of
28   sanctions "against a represented party for violating Rule
     11(b)(2)."

any further notices of removal without prior court approval; 3) a
monetary sanction of at least $50,000 to $100,000 payable to the
court; and 4) striking defendants' notice of removal.

The court has found that defendants were not
objectively reasonable in seeking removal a second time, thus the
bar for imposing Rule 11 sanctions has been met.  Nonetheless,
the court will not impose Rule 11 sanctions because plaintiff's
motion for Rule 11 sanctions was unnecessary in light of §
1447(c) and imposing sanctions is unnecessary to deter defendants
from filing another frivolous notice of removal in the future.

Upon this court granting plaintiff's motion to remand
and awarding plaintiff its fees and costs under § 1447(c), any
harm plaintiff incurred as a result of defendants' frivolous
removal will be remedied.  Plaintiff therefore had nothing to
gain in filing a Rule 11 motion and awarding plaintiff its fees
for filing an unnecessary motion is not consistent with the
purposes of Rule 11.  With the court's unequivocal rejection of
defendants' ERISA preemption argument in this Order, the court is
satisfied that defendants will not attempt to remove this or
another similar case in the future.  Plaintiff's request for an
injunction requiring court approval before a third notice of
removal is filed is also ill-conceived and not well thought out.
As the court explained at oral argument, there is no mechanism in
place for court approval of a notice of removal before it is
filed and developing a procedure for this case would only create
additional work for the court.

While defendants undeniably wasted judicial resources
in filing a frivolous notice of removal, the court finds that

imposing a fine payable to the court would be greater than
necessary to deter defendants from similar conduct in the future.
The parties' frustrations from the seemingly contentious
discovery disputes may also have contributed to plaintiff's
request for a significant fine payable to the court.  The court
will refrain from exceeding its jurisdiction and inserting itself
into disputes that occurred in state court.

Lastly, requiring defendants to pay sanctions to the
court would not enure to the benefit of either the plaintiff or
the court.  It would only serve to enrich the United States
Treasury, and thus have less than a microscopic impact on
anything.  Judges are understandably frustrated when they receive
frivolous or repetitive motions or other pleadings and are
understandably annoyed at having to spend time and judicial
energy in rejecting these frivolous filings.  But, just as it is
an abuse of the court's process to file such pleadings, in this
court's view, it would also be an abuse of power for the court to
vent its frustrations by punishing parties just for the sake of
punishing them.  The court is accordingly will exercise its
power, even assuming it has the power, to impose Rule 11
sanctions based on defendants' frivolous and successive notice of
removal.

IT IS THEREFORE ORDERED that plaintiff's motion to
remand be, and the same hereby is, GRANTED; plaintiff's request
for attorneys' fees and costs under § 1447(c) related to the
second motion to remand be, and the same hereby is, GRANTED and
defendants are ordered to pay plaintiff's fees and costs in the
amount of $33,439.72; and plaintiff's motion for Rule 11

32

1   sanctions be, and the same hereby is, DENIED.

2           The Clerk of the Court is instructed to remand this

3   action to the San Joaquin Superior Court.

4   DATED:  August 21, 2012

5

6                                                   _____

7                                                   WILLIAM B. SHUBB
                                                    UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

33